UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 14-23207-CIV-WILLIAMS

ITZEL HUDEK,

    Plaintiff,

v.

TRUMP MIAMI RESORT
MANAGEMENT, LLC,

    Defendant.

_____/

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Defendant, Trump Miami Resort Management, LLC ("Trump"), pursuant to Local Rule 7.1(c), submits this memorandum in opposition to Plaintiff Itzel Hudek's Motion to Remand ("Motion") [ECF No. 4]. For the reasons stated in Trump's Notice of Removal [ECF No. 1] and for the reasons more fully set forth below, removal of the above-styled cause of action from the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County to the U.S. District Court for the Southern District of Florida is proper pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship of the parties and the amount in controversy exceeds $75,000.[1]

**I. Introduction**

In its Notice of Removal, Trump established that this matter implicated the Court's original jurisdiction because it involved a dispute between citizens of different states and an

---

[1] Plaintiff's Motion was filed in violation of Local Rule 7.1(a)(3) in that Plaintiff did not confer or make reasonable effort to confer with the undersigned in a good faith effort to resolve by agreement the issues raised in her motion.

amount in controversy that exceeds $75,000.00. *See* ECF No. 1.  In Plaintiff's Motion, she concedes the parties' diversity of citizenship; therefore, the only issue before the Court is whether Defendant has established that Plaintiff's claims, though vigorously contested by Trump, will more likely than not involve an amount in controversy in excess of $75,000, exclusive of fees and costs as averred by Trump.  Notably, Plaintiff's arguments to the contrary are properly rejected because:  (1) Plaintiff misstates Trump's burden of proof; (2) Plaintiff ignores the *cumulative* value of her claims; and (3) Plaintiff incorrectly asserts that Trump's evidence and reasonable inferences are too speculative to warrant removal.  Consequently, Plaintiff's Motion is properly denied.

**II.   Argument**

    **a. Trump Need Only Establish by a Preponderance of the Evidence That the Amount in Controversy Is More Likely Than Not Satisfied**

Plaintiff's statement that Trump must prove that the amount in controversy exceeds $75,000.00 by a preponderance of evidence is only partially correct.  In the Eleventh Circuit, where a plaintiff has made an unspecified demand for damages, a defendant seeking removal based on diversity jurisdiction must only show by a preponderance of the evidence that the amount in controversy *more likely than not* exceeds the jurisdictional requirement ($75,000.00).  *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.,* 204 F.3d 1069, 1072-77 (11th Cir. 2000)(citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); 28 U.S.C. §§ 1332 and 1441.  Hence, contrary to Plaintiff's perception that Trump's burden of proof is a "heavy one," it is actually a "relatively low burden."  *Fuller v. Exxon Corp.*, 78 F. Supp.2d 1289,

1297 (S.D. Ala. 1999).  The "lower burden of proof is warranted because there is simply no estimate of damages to which a court may defer." *Tapscott*, 77 F.3d at 1357.

Thus, Trump is not "required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza, II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).  Instead, Trump only has to present "evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations, that it is more likely than not that the value of the relief sought exceeds $75,000."  *Id.*; *Wilson v. Spectera, Inc.*, 2011 U.S. Dist. LEXIS 28004, *2-3 (M.D. Ga. Mar. 18, 2011).  The substantive jurisdictional requirements of removal do not limit the types of evidence that may be used to satisfy the preponderance of the evidence standard.  *Pretka*, 608 F.3d at 755.  Furthermore, when a plaintiff's damages are unspecified, "Eleventh Circuit precedent permits district courts to make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable."  *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061-62 (11th Cir. 2010).  A district court need not "suspend reality or shelve common sense in determining whether the face of a complaint establishes the jurisdictional amount." *Id.*  For the reasons more fully set forth below, Trump easily satisfies this burden.

    b. **The *Cumulative* Value of Plaintiff's Claims for Lost Wages, Non-Economic Compensatory Damages, And Attorneys' Fees Far Exceeds The Jurisdiction Requirement of $75,000**

        i. **The Amount In Controversy Includes Plaintiff's Back Pay Through the Date of Trial**

While Plaintiff argues that back pay should only be calculated from the date of termination through the date of removal, she ignores the rational of recent decisions from the Southern District of Florida, including *Morgan v. Sears, Roebuck, & Co.*, 2012 WL 2523692 (S.D.

3

Fla. June 29, 2012) and *Messina v. Chanel, Inc.*, 2011 WL 2610521, *2 (S.D. Fla. July 1, 2011), which hold that back pay is instead calculated through the date of trial for purposes of determining the amount in controversy. Moreover, like *Morgan* and *Messina*, the courts in *Fusco v. Victoria's Secret Stores, LLC*, 806 F. Supp. 2d 1240 (M.D. Fla. 2011), *Sheehan v. Westcare Foundation, Inc.*, 2013 WL 247143, *2 (M.D. Fla. Jan. 23, 2013); *Cashman v. Host International, Inc.*, 2010 WL 4659399, *2 (M.D. Fla. Nov. 9, 2010) all calculate back pay in the same manner. In doing so where a trial date has not been set, the courts have generally estimated a trial date one year from the date of removal. *Brown v. Cunningham Lindsey U.S., Inc*. 2005 WL 1126670, *4 (M.D. Fla. 2005); *Cashman*, 2010 WL 4659399, *1. As set forth in Trump's Notice of Removal, Plaintiff's back pay from her date of termination through the estimated date of trial one year from now is $73,661. Using this method of calculation does not constitute impermissible speculation, but instead allowable extrapolation. *See Cashman*, 2010 WL 4659399 at *2 (consideration of back pay from the date of removal to date of trial based on conservative estimate of trial date twelve months from date of removal is not impermissible speculation, but instead permissible extrapolation of the submitted evidence).[2]

### ii. Plaintiff Admits That She Is Seeking Front Pay; Thus, it Is Properly Considered in Determining the Amount in Controversy

Plaintiff argues that including an estimate of front pay, based on her own claim for damages, amounts to impermissible speculation. That said, Plaintiff has not renounced her intention to seek front pay. As noted in Trump's Notice of Removal, Plaintiff claimed in her sworn responses to Trump's Interrogatories that she is seeking two years of front pay, with a

---

[2] Assuming *arguendo* Plaintiff's method for calculating back pay is used, which Trump does not concede, Plaintiff's Motion admits that her back pay for purposes of amount in controversy would amount to approximately $41,000.

2% increase per year. Plaintiff erroneously relies on *Brochu v. City of Riviera Beach*, 304 F. 3d 1144, 1162 (11th Cir. 2002) and *Brown v. American Express Co.*, 2010 U.S. Dist. LEXIS 18245 (S.D. Fla. 2010) to argue that front pay should not be considered in determining the amount in controversy for purposes of diversity jurisdiction. To the contrary, front pay, as noted in the decision of *Brown v. American Express*, is recoverable, and can therefore be considered for purposes of establishing the amount in controversy where a basis for a front pay estimate exists. *Brown v. American Express Co.*, 2010 U.S. Dist. LEXIS 18245. Plaintiff's argument ignores similar decisions within the Eleventh Circuit, such as *Brown v. Cunningham Lindsey U.S., Inc*. 2005 WL 1126670 at *4 (crediting one year of back pay *plus* one year of front pay, as a conservative measure of potential lost wages in a wrongful termination case); *Ambridge v. Wells Fargo Bank, N.A.*, 2014 WL 4471545 (M.D. Fla. Sept. 10, 2014) (additional forms of damages requested by plaintiff, including front pay, are considered in determining amount in controversy); *Fusco*, 806 F. Supp. 2d 1240 (estimate of front pay suggested by defendant used to determine if requisite amount in controversy existed at time of removal).

With more support than in *Brown v. Cunningham Lindsey U.S., Inc.*, *Ambridge*, and *Fusco*, where the courts relied solely on reasonable deductions or inferences, the Court here can instead rely on Plaintiff's own claims when determining the amount of front pay to be considered for establishing the amount in controversy: two years of front pay with a 2% increase per year. *See* Plaintiff's Response to Interrogatories, attached as Exhibit B to Trump's Notice of Removal [ECF No. 1-2]. Using the uncontested salary figures set forth in Ms. Pereda's Declaration [ECF No. 1-5], two years of front pay—without accounting for the 2% increase per year as requested by Plaintiff—amounts to $70,720. Arguing that Trump's estimate of front

5

pay for purposes of amount in controversy based on Plaintiff's own sworn interrogatory response is speculative is entirely ineffective.  As such, Plaintiff's lost wages alone, $73,661 in back pay plus $70,720 in front pay, cumulatively far exceed the $75,000 threshold to establish diversity jurisdiction here.

### iii. Plaintiff's Vague References to a Possible Defense of Mitigation of Lost Wages Does Not Reduce the Amount in Controversy at the Time of Removal

Plaintiff's vague reference to possible mitigation of lost wages between now and trial is irrelevant. *See   Tillett v. BJ's Wholesale Club, Inc.*, 2010 U.S. Dist. LEXIS 78395, 14-15 (M.D. Fla. July 16, 2010) ("[E]vents occurring after removal which may reduce the damages recoverable below the amount in controversy requirement do not oust the district court's jurisdiction.")(internal citations omitted).  In both *Osorio v. Medtronic*, Inc., 11-20596-CIV-Huck/O'Sullivan (S.D. Fla. Mar. 23, 2011) and *Hendry v. Tampa Ship, LLC*, 2011 U.S. Dist. LEXIS 14459, *6-7 (M.D. Fla. Feb. 4, 2011), the district courts found it significant that that the plaintiffs did not provide any evidence contradicting the defendants' damage calculations.  In each case, the district court disregarded the plaintiff's claim that mitigation efforts should be considered when plaintiff failed to controvert defendant's calculations but instead merely argued that she may not ultimately recover the entire amount alleged. *See also Pretka*, 608 F.3d at 771 (opining that a district court may use its judgment and experience to decide "which party has access to the relevant information.").  Similarly, although Plaintiff is in the best position to do so, she has not presented any evidence indicating that she mitigated her losses through employment since being laid off by Trump aside from requesting reinstatement as part of her August 20, 2014 settlement demand.  In contrast, Trump provided uncontroverted,

concrete information which supports its calculation of the amount in controversy at the time of removal. Plaintiff cannot avoid federal jurisdiction in a Florida Civil Rights Act case merely by not specifying an amount of damages and then, after Trump makes a *prima facie* showing of the requisite amount in controversy, declining to provide tangible evidence of mitigation.

In any event, the amount in controversy is not to be reduced by potential defenses to the claim that are not apparent from the face of Plaintiff's own Complaint. In fact, in *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938), the Supreme Court opined as follows:

> But the fact that it appears from the face of the complaint that the defendant has a valid defense, if asserted, to all or a portion of the claim, or the circumstance that the rulings of the district court after removal reduce the amount recoverable below the jurisdictional requirement, will not justify remand.

*See also id.* at 292; *Black v. State Farm Mutual Auto. Ins. Co.*, 2010 U.S. Dist. LEXIS 120023, *2 (S.D. Fla. October 22, 2010) ("any set-off to which [d]efendant may be entitled is irrelevant at the jurisdictional stage, as the Court must look at the amount in controversy at the time of removal"); *Stramiello v. Petsmart, Inc.*, 2010 U.S. Dist. LEXIS 59119, *11 (M.D. Fla. May 26, 2010) (subject matter jurisdiction is not defeated simply because the parties might anticipate a future reduction in recoverable damages). Thus, Plaintiff's deliberately vague and unsupported arguments regarding mitigation do not reduce the amount in controversy.

      **iv. Attorneys' Fees Are Properly Considered In Determining the Amount in Controversy**

Plaintiff does not dispute that a reasonable estimate of attorneys' fees likely to be incurred through the date of trial is part of the benefit permissibly sought by Plaintiff, and thus, contributes to the amount in controversy. *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265

7

(11th Cir. 2000); *Hall v. Am. Sec. Ins. Co.*, 2009 U.S. Dist. LEXIS (S.D. Fla. Jul. 22, 2009)(disagreeing that the appropriate calculation of a reasonable attorneys' fee for purposes of determining the amount in controversy only includes those fees incurred until the time of removal, but finding that the defendant failed to prove the amount of a reasonable fee award); *Brown v. Cunningham Lindsey U.S., Inc.* 2005 WL 1126670 at *4. Although she is in the best position to do so, Plaintiff has not presented any evidence indicating what Plaintiff's counsel's hourly rate is or what fees have been incurred to date; instead, she merely claims that Trump's use of reasonable inferences and experience is inappropriate. *Cf. Hall*, 2009 U.S. Dist. LEXIS at *4 (determining that defendant failed to establish the reasonable amount of attorneys' fees to be included in the amount in controversy where the plaintiff's counsel filed a stipulation indicating that her fees were nowhere near the amount needed to satisfy the amount in controversy). Given that Plaintiff's potential unmitigated lost wages claim ($73,661), plus front pay ($70,720), already exceed the amount in controversy, it is reasonable to hold that the resources that will have to be devoted to resolve the lawsuit are further evidence that the amount in controversy is satisfied. Moreover, the amount of fees commonly incurred in similar litigation can be reasonably estimated based on experience. *See Gavronsky v. Walgreen Co.*, 2010 WL 717485, *2 (M.D. Fla. Feb. 26, 2010)(courts may consider decisions in comparable cases to determine whether the amount in controversy requirement is met). Certainly, attorneys are called upon to estimate the potential attorneys' fees at the outset of the litigation on a regular basis, and Plaintiff's counsel seems to have already done so as evidenced in in the August 20, 2014 settlement demand letter. That correspondence states that the attorneys'

fees on August 20, 2014 were $21,000, "and very low at [that] point."  *See* Plaintiff's August 20, 2014 settlement demand correspondence, attached as Exhibit A.

Moreover, as set forth in Trump's Notice of Removal, the Court can take judicial notice that attorneys' fees sought in similar employment termination cases in the Southern District of Florida routinely approach or exceed the $75,000 threshold.  *See Alshakanbeh v. Food Lion, LLC*, 2007 WL 917354, *2 (M.D. Fla. 2007) (estimate of $40,000 for attorneys' fees in Jacksonville employment discrimination case was "conservative.").  While Plaintiff avers that Trump's $40,000 attorneys' fee estimate is arbitrary and inflated, Plaintiff's August 20, 2014 correspondence and the *Alshakanbeh* decision prove otherwise, and demonstrate that such an estimate is not mere speculation.

### v. Compensatory Damages

Contrary to the position taken in Plaintiff's Motion, non-economic compensatory damages are considered for purposes of determining the amount in controversy.  Though Trump cannot accurately estimate an amount of non-economic damages, the court may reasonably infer that these additional claims and damages significantly bolster the evidence of Plaintiff's prima facie "lost wages" claim and easily satisfy the amount in controversy.  As noted by *Bartley v. Starwood Hotel & Resorts Worldwide, Inc*., compensatory damages may include a variety of intangible, non-economic losses that potentially exceed the jurisdictional minimum.  *See generally*, 2007 WL 2774250 (S.D. Fla. 2007)(general allegations of pain, mental anguish, scarring, disfigurement, loss of enjoyment of life, medical expenses, etc. sufficient to put defendant on notice that jurisdictional minimum was satisfied).  While Trump cannot assign a specific amount, *Brown v. Cunningham Lindsey* acknowledges that compensatory damages in

employment discrimination cases may significantly increase the amount in controversy. *Brown v. Cunningham Lindsey,* 2005 WL 1126670 at *5 (citing *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1348-49 (11th Cir. 2000)).  Because Plaintiff's claim for lost wages alone satisfies the jurisdictional amount in controversy requirement, Trump maintains that the Court need not consider compensatory damages.  *See Morgan*, 2012 WL 2523692 at *2.  However, because Plaintiff does not dispute and instead claims she is entitled to such non-economic damages, specifically in the amount of $15,000, *see* Exhibit A at p. 2, the compensatory damages must be considered by the Court when evaluating the amount in controversy.

### c. The Amount Demanded In Plaintiff's August 20, 2014 Correspondence Is Appropriately Considered To Determine The Amount in Controversy

Plaintiff's Motion does not dispute the amount demanded in Plaintiff's August 20, 2014 correspondence, as set forth in Trump's Notice of Removal.  Instead, Plaintiff's Motion emphasizes that the demand letter was not attached to Trump's Notice of Removal and mischaracterizes the weight given to demand letters for purposes of establishing the amount in controversy.  As a matter of professional courtesy, the undersigned chose not to attach Plaintiff's settlement demand letter to its Notice of Removal.  In light of Plaintiff's Motion, Trump attaches the August 20, 2014 correspondence as Exhibit A for the Court's review.  *See Brown v. Cunningham Lindsey U.S., Inc*. 2005 WL 1126670 at *3 (court properly considered post-removal document because it was relevant to the amount in controversy at the time of removal).  In addition, while Plaintiff attempts to undermine the value attached to settlement demand letters, the court in *Burns v. Windson Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir.1994) actually noted that a "settlement offer, **by itself may not be determinative, but it counts for something.**"  (emphasis added).  Further, the court in *Reynolds v. Busch Entm't Corp.*, 2003 WL

25569730 (M.D. Fla. June 18, 2003) specifically held that the defendant properly relied only on a settlement demand to establish the amount in controversy when removing the case to federal court.  *Reynolds* is particularly inapposite here in that it makes a distinction between settlement demands that make broad statements of injury that are mere posturing, and settlement demands—such as Plaintiff's August 20, 2014 demand letter in this case—which provide specific details as to the demand amount and offer "an honest assessment of damages." *Id*. at *5; *see* Exhibit A.  Plaintiff now attempts to backpedal from the statements in the correspondence by suggesting that it was a mere starting point for further negotiations; however, virtually all settlement demands are communicated to encourage further settlement negotiations.  To accept Plaintiff's argument that her demand letter should not be used to determine the amount in controversy here would disregard established case-law and otherwise invalidate the use of settlement demands for purposes of removal all together.

Even though a demand letter alone may not be enough to ascertain the amount in controversy for purposes of removal, Trump has not merely offered a general demand letter in support of its removal.   Contrary to Plaintiff's position, Trump has submitted a detailed demand letter outlining and explaining each type of injury and/or damage for which Plaintiff seeks settlement for.  *See* Exhibit A.  The August 20, 2014 demand for $92,325.86 can be used together with Plaintiff's sworn response to interrogatories and uncontested declaration from Ms. Pereda to adequately deduce and extrapolate the amount in controversy without the need to speculate.

### d.  Trump Had An Objectively Reasonable Basis For Removal

With no explanation, Plaintiff contends that she is entitled to attorneys' fees incurred in

bringing her Motion. While Trump asserts that removal is proper, in the event it is unsuccessful, an award of fees is not appropriate. The U.S. Supreme Court has held that, absent unusual circumstances, attorneys' fees should not be awarded when the removing party has an objectively reasonable basis for removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005). Thus, there is no indication that a trial court should ordinarily grant an award of attorneys' fees whenever an effort to remove fails." *Kennedy v. Health Options, Inc.*, 329 F.Supp.2d 1314, 1319 (S.D. Fla. 2004).

Unlike the removing party in *Rae v. Perry*, Trump assessed Plaintiff's claims and reasoned, on the authority of several cases, that the amount in controversy exceeded $75,000. 2009 U.S. Dist. LEXIS 102876 (M.D. Fla. Oct. 21, 2009) (fees were appropriate where only evidence submitted was the complaint and noting that the removal was filed in the improper forum and did not have unanimity among defendants), *aff'd* 2010 U.S. App. LEXIS 17209 (11th Cir. Fla., Aug. 16, 2010). Furthermore, Trump's calculations are not based on its own speculation; rather, they are based on its unrebutted evidence that supports its calculation of Plaintiff's wage-based damages, which alone exceed the amount in controversy. *See Fletcher v. Thomas & Betts Corp.,* 2010 U.S. Dist. LEXIS 63717 (M.D. Fla. June 3, 2010. As such, an award of fees would be improper.

### III. CONCLUSION

Plaintiff's position with regard to Trump's assertion that this matter satisfies the amount in controversy requirement is disingenuous at best. Without more, and by Plaintiff's own admissions, her claim for lost wages far exceeds the $75,000 threshold. Even accepting Plaintiff's method of calculating back pay for purposes of determining amount in controversy,

her lost wages still amount to more than $110,000.  Taking into further consideration Plaintiff's claim for non-economic compensatory damages, claimed attorneys' fees to date, and settlement demand of over $90,000, the claims in the instant action more likely than not involve an amount in controversy in excess of $75,000.  For all of the foregoing reasons, and for those set forth in Trump's Notice of Removal, Plaintiff's Motion for Remand should be denied.

Dated:  this 26th day of September 2014.          Respectfully submitted,

By: *s/ Jorge Zamora, Jr.*
Jonathan A. Beckerman
Florida Bar No.: 0568252
E-mail: jabeckerman@littler.com
Jorge Zamora, Jr.
Florida Bar No.: 0094713
E-mail: jzamora@littler.com
LITTLER MENDELSON, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL  33131
Tel: 305.400.7500
Fax: 305.603.2552

Attorneys for Defendant
*Trump  Miami Resort Management, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of September 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in a manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Jorge Zamora, Jr.*
Jorge Zamora, Jr.

**SERVICE LIST**

**COUNSEL FOR PLAINTIFF:**
Rachel L. Goldstein, Esq.
Florida Bar No.: 0095973
E-Mail: rgoldstein@justdigit.org
Matthew W. Dietz, Esq.
Florida Bar No.: 0084905
E-mail: mdietz@justdigit.org
DISABILITY INDEPENDENCE GROUP, INC.
2990 Southwest 35th Avenue
Miami, Florida 33133
Telephone: (305) 669-2822
Facsimile: (305) 442-4181
[Via Notice of Electronic Filing]

**COUNSEL FOR DEFENDANT:**
Jonathan A. Beckerman
Florida Bar No.: 0568252
E-mail: jabeckerman@littler.com
Jorge Zamora, Jr.
E-mail: jzamora@littler.com
Florida Bar No.: 0094713
LITTLER MENDELSON, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, Florida 33131
Tel: 305.400.7500
Fax: 305.603.2552
[Via Notice of Electronic Filing]


Firmwide:129159963.1 073227.1008